UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SUSANNE CLAIR,

          Plaintiff,

                                       Case No. 24-cv-12030
v.                                     Honorable Linda V. Parker

ZMO HOMES LLC
a foreign limited liability company,

          Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 13) AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 14)

This action arises from Defendant's alleged breach of an agreement to purchase Plaintiff's residential property.  The matter is presently before the Court on the parties' cross-motions for summary judgment.  (ECF Nos. 13, 14.)  The motions have been fully briefed.  (ECF Nos. 15-17.)  Finding the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

### I.    Legal Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has the initial burden of showing "the absence of a genuine

issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once

the movant meets this burden, "[t]he party opposing the motion must show that

'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable

jury could return a verdict' for that party."  *Smith v. City of Toledo*, 13 F.4th 508,

514 (6th Cir. 2021) (quoting *Liberty Lobby*, 477 U.S. at 248).  The non-movant's

evidence generally must be accepted as true and "all justifiable inferences" must be

drawn in the non-movant's favor.  *Liberty Lobby*, 477 U.S. at 255.

When reviewing cross-motions for summary judgment, the court must assess

each motion on its own merits.  *Fed. Ins. Co. v. Hartford Steam Boiler Inspection

& Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005).  "The standard of review for cross-

motions for summary judgment does not differ from the standard applied when a

motion is filed by only one party to the litigation."  *Lee v. City of Columbus*, 636

F.3d 245, 249 (6th Cir. 2011).  "[T]he filing of cross-motions for summary

judgment does not necessarily mean that an award of summary judgment is

appropriate." *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr.*, 410 F.3d 304, 309 (6th Cir. 2005).

## II.     Factual and Procedural Background

In early spring of 2024, the parties engaged in discussions regarding Defendant's interest in purchasing Plaintiff's home.  (ECF No. 13, PageID.70.)  On May 20, 2024, Defendant sent a representative to conduct a visual inspection of the home and to take pictures and videos.  (*Id.*; ECF No. 14, PageID.93; ECF No. 14-5, PageID.216.)  On the following day, May 21, 2024, the parties signed and entered into a purchase and sale agreement ("Agreement") in which Defendant agreed to buy Plaintiff's home for $440,000.  (ECF No. 13, PageID.70; ECF No. 14, PageID.82; ECF No. 14-1, PageID.106.)

Before the Agreement was executed, the parties negotiated its terms.  (ECF No. 14, PageID.82.)  Plaintiff's counsel negotiated on her behalf and proposed revisions to Paragraph 10 of the contract.  Paragraph 10 originally provided:

> "Marketing: Seller grants Buyer the right to market the property in MLS, social media and other online and offline platforms through a licensed real estate broker and/or by owner.
>
> Buyer is taking the property in "AS-IS" condition subject to [B]uyer's right for inspection of the property for a period not to exceed the closing date. Buyer reserves the right to do a final walkthrough during the twenty-four (24) hours period prior to closing." (ECF No. 14-1, PageID.106.)

Plaintiff's counsel changed the language to reflect the following:

3

"Marketing: Seller grants Buyer the right to market the property in MLS, social media, and other online and offline platforms through a licensed real estate broker and/or by owner. Buyer is taking the property in AS-IS condition[.]"

The revised version removed language concerning the Buyer's right to inspection and walkthrough.  Plaintiff's counsel's edits to Paragraph 10 appear in the "**SPECIAL STIPULATIONS**" section at the end of the Agreement, following the words "[n]ew edit to section 10."  (ECF No. 14-1, PageID.107.)

Plaintiff acknowledges that her counsel only proposed edits to Paragraph 10, even though Paragraph 5 of the Agreement also contains language addressing the Buyer's right to inspection.  (ECF No. 14-2, PageID.140-41.)  Paragraph 5 states: "This agreement is contingent upon clear title and **satisfactory inspection of the property by buyer and/or buyer's partners before closing**.  *Id.* (emphasis added). In her deposition, Plaintiff testified that she believed that the parties struck Paragraph 5 because it contained language nearly identical to the edited portion of Paragraph 10.  (ECF No. 14-2, PageID.168.)

Importantly, neither party proposed edits to any other provision in the Agreement. The final version of the parties' Agreement includes a cancellation provision in Paragraph 9, which states, "[t]he buyer will notify the seller about cancellation by phone or by E-mail and seller will confirm it by E-mail."  (ECF No. 14-1, PageID.106.)

4

On May 22, 2024—one day after the Agreement was executed—an agent of Defendant called Plaintiff and informed her that Defendant's investors wanted to withdraw from the deal.  (ECF No. 14-2, PageID.167; ECF No.14-3; PageID.212.) On May 23, 2024, Plaintiff's counsel emailed Defendant sharing that Plaintiff had paid movers a premium to expedite her move and that she would vacate the property by June 6, 2024. (ECF No. 14-4, PageID.214.)  An agent of Defendant, Isabelle Hudson, responded that Defendant would not be moving forward with the transaction and that Plaintiff had been informed of its decision on the previous day. (*Id.*)

On August 5, 2024, Plaintiff initiated this action.  After the close of discovery, the parties filed cross-motions for summary judgment.  (ECF Nos. 13 & 14.)  Plaintiff claims Defendant breached the Agreement by failing to proceed with the purchase despite inspecting the property and agreeing to buy it "as is." Conversely, Defendant argues that Paragraph 5 remained part of the final Agreement, and that the provision makes clear that Defendant's agreement to purchase the home was contingent on a satisfactory inspection.  Defendant also argues that the cancellation provision in Paragraph 9 allowed Defendant to cancel the Agreement, even after execution, which it asserts it did in writing on May 23, 2024.  (ECF No. 14, PageID.87.)

### III.   Analysis

Courts interpreting a contract must give effect to the intent of the parties, and that intent is determined "first and foremost by the plain and unambiguous language of the contract itself." *Kendzierski v. Macomb Cnty.*, 503 Mich. 296, 311; 931 N.W.2d 604 (2019) (citing *Wyandotte Electric Supply Co. v. Electrical Technology Sys., Inc.*, 499 Mich. 127, 143-144; 881 N.W.2d 95 (2016)). Unambiguous contracts are not open to judicial construction. *See Rory v. Continental Ins. Co.*, 473 Mich. 457, 468; 703 N.W.2d 23 (2005). When contractual language is unambiguous, courts "must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Kendzierski*, 503 Mich. at 311 (citing *In re Smith Trust*, 480 Mich. 19, 24; 745 N.W.2d 754 (2008)).

"A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." *Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich.*, 500 Mich. 32, 40; 892 N.W.2d 794 (2017). Ambiguity may also arise when "two provisions of the same contract irreconcilably conflict with each other[.]" *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 467; 663 N.W.2d 447 (2003). "Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals to freely arrange their affairs via contract." *Id.*

6

Under Michigan law, termination or cancellation clauses are enforceable and do not render a contract void for lack of mutuality. *J.R. Watkins Co. v. Rich*, 254 Mich. 82, 84-85; 235 N.W. 845 (1931); *Jaye v. Tobin*, 42 Mich. App. at 760, 202 N.W.2d 712. "Cancellation" has a "peculiar and appropriate meaning in the law." *Titan Ins Co v. Hyten*, 491 Mich 547, 567; 817 NW2d 562 (2012) (footnote omitted). When a contract is cancelled in accordance with a cancellation provision within, "it is terminated as of the cancellation date and is effective up to such date[.]" *Id.* Courts must construe such provisions as written. *See Coates v. Bastian Bros, Inc.*, 276 Mich. App. 498, 503; 741 N.W.2d 539 (2007).

Here, the parties focus much of their briefing on whether Paragraph 5—the inspection contingency—was included in the Agreement and, if so, whether Defendant properly invoked it. Plaintiff argues that the property "passed" inspection when Defendant's representative and photographer told her that the home appeared to be in good condition. (ECF No. 13, PageID.70; ECF No. 14-2, PageID.171.) Defendant argues that the inspection was not complete until it reviewed the footage, and that it pulled out of the Agreement because the inspection results did not satisfy its investors. (ECF No. 14-2, PageID.167; ECF No.14-3; PageID.212.)

However, the Court need not resolve this dispute because the Agreement contains an express cancellation provision. (ECF No. 14-1, PageID.106.) Plaintiff

does not dispute that Defendant provided written notice invoking that provision on May 23, 2024, by email.  (ECF No. 13, PageID.70; ECF No. 14-2, PageID.176-78; ECF No.14-4, PageID.214.)  Plaintiff also acknowledges that an agent of Defendant called her on May 22, 2024, to inform her that there was a possibility of cancellation.  (ECF No.14-2, PageID.187; ECF No. 14-3, PageID.212.)  Under Michigan law, cancellation clauses are enforceable according to their terms, and cancellation becomes effective upon the notice specified in the contract.  Because Defendant provided both verbal and written notice consistent with the contractual language, the cancellation was effective.

The record further shows that Plaintiff retained counsel to review and negotiate the Agreement on her behalf.  Plaintiff does not dispute that her attorney had the opportunity to propose revisions to any standard terms, including the cancellation clause.  The final Agreement reflects that Defendant accepted Plaintiff's  counsel's proposed edits, as documented in the "**SPECIAL STIPULATIONS**" section at the end of the Agreement.  (ECF No. 14-1, PageID.106.)  Plaintiff also testified in her deposition that she and her attorney were satisfied with the negotiated changes and with the remaining paragraphs in the contract.  (ECF No. 14-2, PageID.140.)  These facts indicate that the parties reached an agreement on the contract's terms and that the final version reflected the intent of both parties.

Because the cancellation provision is unambiguous, the Court must enforce it as written.  The cancellation clause clearly permits Defendant to terminate the Agreement upon written notice, and Plaintiff has not identified any conflicting language or alternative interpretation that would create ambiguity.  Nor is there evidence suggesting that the parties intended the clause to function differently from its ordinary meaning.

On this record, the undisputed facts demonstrate that the parties negotiated the Agreement with the assistance of counsel, agreed to the inclusion of the cancellation provision, and that Defendant provided both verbal and written notice in accordance with that provision.  Under settled Michigan law, the Court must enforce the contract as written to give effect to the parties' intent.  Accordingly, the Court finds that Defendant properly canceled the Agreement and is not in breach of the same.

## IV.   Conclusion

For the reasons set forth above, the Court concludes that Defendant is entitled to summary judgment with respect to Plaintiff's breach of contract action.

Accordingly,

**IT IS ORDERED** that Plaintiff Clair's motion for summary judgment (ECF No. 13) is **DENIED** and Defendant ZMO Homes LLC's motion for summary

9

judgment (ECF No. 14) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: April 22, 2026